UNITED STATES v. JOHN REARDON & SONS CO. et al.

SAME v. SULZBERGER et al.

SAME v. HEATH et al.

(Circuit Court, D. Massachusetts. June 23, 1911.)

Nos. 101, 102, and 103.

1. INDICTMENT AND INFORMATION (§ 63*)—SUFFICIENCY—DESCRIPTION OF OFFENSE.

It is never sufficient to charge in an indictment that an act is illegal, but something more must be alleged which the court can see on the face of the indictment is illegal if the facts are proven.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 185; Dec. Dig. § 63.*]

2. MONOPOLIES (§ 31*)—ANTI-TRUST ACT—INDICTMENT FOR VIOLATION.

Indictments *held* insufficient to charge a combination in Massachusetts in restraint of interstate trade and commerce in violation of the Sherman anti-trust act (Act July 2, 1890, c. 647), 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]), when the overt acts charged were committed without that state.

[Ed. Note.—For other cases, see Monopolies, Dec. Dig. § 31.*]

3. MONOPOLIES (§ 31*)—ANTI-TRUST ACT—INDICTMENT FOR VIOLATION—"RESTRAINT OF TRADE."

Regulation of trade is not restraint of trade, and an indictment charging a combination to regulate interstate trade must go further and aver facts showing that the regulation is in restraint or monopoly of such trade to charge an offense under the Sherman anti-trust act (Act July 2, 1890. c. 647, 26 Stat. 209 (U. S. Comp. St. 1901, p. 3200)).

[Ed. Note.—For other cases, see Monopolies, Dec. Dig. § 31.*

For other definitions, see Words and Phrases, vol. 7, pp. 6185–6186.]

4. MONOPOLIES (§ 31*)—ANTI-TRUST ACT—INDICTMENT FOR VIOLATION.

An indictment charging merely that defendants entered into an agreement to regulate prices to be paid to dealers in certain commodities in Boston and vicinity and to apportion the trade among themselves, and that pursuant to such agreement they did so regulate prices and apportion such trade, without the averment of any facts showing the effect of such regulation or that others were excluded from such trade, or that such action in any way injuriously affected interstate trade and commerce, is insufficient to charge a combination or conspiracy to monopolize interstate commerce in violation of the Sherman anti-trust act (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]).

[Ed. Note.—For other cases, see Monopolies, Dec. Dig. § 31.*]

Indictments against the John Reardon & Sons Company and the Consolidated Rendering Company, against Ferdinand Sulzberger and Horatio W. Heath, and against Horatio W. Heath and Cyrus S. Hapgood. On demurrers to indictments. Demurrers sustained.

Assistant Attorney General Gregg and United States District Attorney French, for the United States.

Whipple, Sears & Ogden, for defendant John Reardon & Sons Co.

Hutchinson & Hutchinson, for defendant Consolidated Rendering Co.

Whipple, Sears & Ogden, David A. Ellis, and Charles F. Choate, Jr., for defendant Sulzberger.

Herbert Parker and Hutchinson & Hutchinson, for defendant Heath.

Herbert Parker, specially, and Hutchinson & Hutchinson, for defendants Heath and Hapgood.

PUTNAM, Circuit Judge (orally). These three indictments, Nos. 101, 102 and 103, I have carefully examined, and the supplemental brief filed by the United States and the cases cited therein; and I find nothing that changes my views about them. I see in the cases some very important questions, which I will refer to incidentally. I suppose, under the statute about writs of error to the Supreme Court, they so far concern the interpretation of the statutes against monopolies that they may go to that court; but, in my judgment, these in-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

dictments are not in proper condition to take up any case to the Supreme Court. While I refer to these questions, I decide these demurrers upon the particular defects in pleading to which I will refer.

[1] There has been so much said about the Sherman Act, one way and another, that it is not worth while for me to undertake to go over it, except to refer briefly to two cases cited by the United States. The fact of it is that, in the state of the voluminous opinions in reference thereto, it is safer for any judge to apply to these statutes the major rules of construction and application of criminal statutes with which he has been familiar during his lifetime, and I propose to adhere to them. The fundamental rule, which never has been overthrown by the Supreme Court, although there are undoubtedly numerous expressions which would seem to shake it, is that it is never sufficient to allege that an act is illegal, but you must allege something more which the court can see on the face of the indictment is illegal if the facts are proven. These indictments are full of difficulties of that character.

[2] Look first at the two indictments here, I think 101 and 102, whichever they are, the two indictments which are based simply upon allegations that the defendants have refrained from purchasing the material with which their rendering establishments are run at certain points. The United States for that seem to rely upon the well-known Swift Company Case in 196 U. S. 375, 25 Sup. Ct. 276, 49 L. Ed. 518, where it is true that the fundamental fact was as is alleged in these indictments, that the respondents conspired not to purchase; but there was a great deal more in it, too. There was a conspiracy of an extensive character. The defendants cannot be ordered to compete, the court said, but they probably can be forbidden to give directions or to make agreements not to compete; and the case is full of elements showing the illegal character of the whole conspiracy and combination. Now, there is nothing in these indictments except allegations that these parties had ceased purchasing, one in one locality and another in another locality, where heretofore they had been purchasing; and it brings right to the court straight the proposition that the Congress of the United States can compel people to purchase whether they wish to or not—the naked proposition. That is all there is of it. There are no circumstances, there is nothing to give color to these transactions, as a part of a conspiracy, as there was in the Swift Case. I do not believe, sitting here, that the Congress of the United States can do that thing constitutionally, and I do not believe they have undertaken to do it. The allegations here are very naked. There is nothing to give any color of illegality to them whatever. Simply they say the respondents "knowingly and willfully refrained from making any purchases whatever of such raw materials, either at Portland or Bangor aforesaid." That is all there is of it. Nobody knows why they refrained. It is a mere straight charge that, because two different concerns refrain from purchasing certain material which they had previously been in the habit of purchasing, they can be punished under this Sherman act. That is a question for the Supreme Court, no doubt. I do not propose to dispose of these indictments, these two

indictments, on the merits of that question; but I refer to it because, whatever shape these indictments may come in if they come before me again, that is a question which I should wish to be thoroughly satisfied about before ruling on it, but the present indictments must go from here because they do not show clearly any unlawful act committed within the district of Massachusetts. The question is very peculiar. They almost do it, but they do not do it. They say generally that the respondents engaged in a combination in Massachusetts in restraint of trade and commerce. Of course, the rule comes in there that it must be shown that the combination was illegal, and in what respect it was illegal. So they say "in that, in pursuance of an agreement and understanding between them the said corporations, said John Reardon & Sons Company has knowingly and willfully refrained from making any purchases whatever of such raw materials" in other states than Massachusetts. The intendment of all that is said, the fair intendment, is to lead the judicial mind direct to the proposition that whatever was done was done outside of the state of Massachusetts; and the indictment fails, although by very narrow lines, to allege clearly an illegal combination within this state. The overt acts were all outside of the state, so the question whether indictment will lie where the overt acts were committed does not arise, and the indictment is not sufficiently clear in those particulars for me to allow this case to go any further. Therefore, for that reason, I shall sustain the demurrer to those indictments.

Now, the other indictment, which strikes me as the Heath indictment because the Heath name appears so much in it, is clearly defective, because it fails absolutely to allege anything in the way of showing wherein the transactions complained of were unlawful. Of course, general phraseology is used charging illegality and all that; but it is impossible to ascertain from what is said here wherein what was done was unlawful. The larger portion of the indictment is taken up with what is strictly intrastate business; that is to say, it is taken up with the fact that the two parties charged here were engaged in purchasing material at Boston for the purpose of being worked up at Cambridge. That, of course, is all immaterial, except as it leads up in the way of inducement. Then there is brought in the Eastern Oil & Rendering Company, which, so far as I can understand, is not charged here with any offense, but is brought in as the party suffering by reason of the alleged combination between the parties who are indicted. That corporation existed under the laws of Massachusetts, but its plant was in New Hampshire, and it purchased its supplies for its plant in New Hampshire, and shipped its products into various states apparently. Therefore that corporation was engaged in interstate commerce. But the indictment entirely fails to show how in any possible way the respondents interfered with the interstate commerce of that particular corporation, and no other interstate commerce is referred to in the indictment. The allegation, moreover, is that the respondents "entered into an agreement and understanding to regulate the prices to be paid to wholesale and retail dealers in meat in Boston and its immediate vicinity, and to apportion the trade among them-

selves, in the purchase of suet, cods, trimmings, and bones, from said wholesale and retail dealers in meat, as aforesaid, and in pursuance of the agreement and understanding, as aforesaid, said defendants have regulated the prices of raw materials, and have apportioned among themselves the trade in such raw materials, for the purpose of restraining and destroying the trade and commerce in the purchase of such raw materials, as aforesaid," etc. That is all there is in·the allegation there giving any color of any illegal purpose or of anything working out any illegal result.

[3] Regulation of trade is not restraint of trade. On the other hand, regulation of trade may be the very thing which secures freedom of trade. There are plenty of illustrations. Take, for instance, the great lines running Atlantic steamers into Boston. While they are running their steamers in here, they find there is lack of outward freight while there is a surplus of outward freight at New York, and they combine among themselves to regulate the sailing of their steamers, so as to give more steamers at New York and fewer at Boston. That is a regulation. Did anybody ever suppose that that was restraint of trade in any proper sense of the word? In my own state the most singular illustration is to be found where there was a congeries of small railroads, and all of them consolidated by state action into a single great trunk line, an act which, as many people have construed the Sherman act, would be absolutely illegal. It is admitted beyond all question that that single line does the work of the state to the entire satisfaction of the state in a way that those smaller lines could not possibly do it.

Therefore something more than mere regulation is necessary, particularly as the indictment does not show whether or not by regulation they cut down prices or enhanced them, or had any power to divide up the territory so as to obtain a monopoly of any part thereof. All the cases where there has been a regulating found by the Supreme Court to be illegal, or a division of territory, there has been a practical monopoly in certain directions resulting therefrom, or the common case where parties agreed under a penalty to divide up, generally condemned by the Supreme Court, and by all the courts.

[4] Here there is nothing of that nature. There is a mere statement here that the respondents did undertake to regulate prices and to apportion out the territory, without anything whatever from which the court can properly find that these things charged against the respondents were injurious to the only interstate trade referred to here, which is that of the Eastern Oil & Rendering Company. There is nothing in this indictment from which the court can see or can infer from any process of reasoning or suggestion or guessing that what was done by these respondents, even if illegal had any effect, any possible effect, either in fact or at law, upon the only interstate commerce which the indictment points out, that of the Eastern Oil & Rendering Company. There is nothing to show, indeed, that anybody was not as free to purchase in the territory referred to, and at the prices he might select, as he was and would have been independently of any action of the respondents.

I wish to refer just a moment to two cases upon which the United States rely. One is the Armour Case, 209 U. S. 56, 28 Sup. Ct. 428, 52 L. Ed. 681. The Armour Case was under the interstate commerce statutes. Those statutes have received such a harsh construction, because, as they are enforced and construed, the intent, and the absolute innocence of any guilty intention by the respondent, is not of any consequence at all. It is not necessary to allege any illegal features. It is sufficient to allege under those statutes as construed by the courts that rebates were given in fact, and the amount of the rebates, and nothing else. They may have been given under pure misunderstanding of facts and clearly with the most innocent intention. But, of course, statutes with reference to restraint of trade never have taken on those features.

Then there is the Swift Case, where the major fact was not that the parties combined merely to purchase within certain districts, but a great many other facts of more important character were coupled in to make out the illegality of the combination. I can illustrate what I mean by reading from the headnote without going through the opinion:

"A combination of the dominant proportion of the dealers in fresh meat throughout the United States not to bid against, or only in conjunction with, each other, in order to regulate prices in, and induce shipments to, the live stock markets in other states, to restrict shipments, establish uniform rules of credit, make uniform and improper rules of cartage, and to get less than lawful rates from railroads, to the exclusion of competitors, with intent to monopolize commerce among the states, is an illegal combination."

Well, it might be perhaps as looking to a monopoly, and a monopoly created in certain ways may be within the statute, while mere contracts or combinations in restraint of trade, unless with certain earmarks of illegality, are not.

Mr. Clerk, in each of these cases you may enter a judgment:

Demurrer sustained; indictment adjudged insufficient; respondents discharged.